# Exhibit D – Liquidation Analysis

## EXHIBIT D

## HYPOTHETICAL LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code, often called the "best interests" test, requires that the Bankruptcy Court find, as a condition to Confirmation, that each Holder of a Claim or Equity Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (1) estimate the cash proceeds (the "Liquidation Proceeds") that a Chapter 7 Trustee would generate if the Debtor's Chapter 11 Case were converted to a Chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (2) determine the distribution (the "Liquidation Distribution") that each non-accepting Holder of a Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in Chapter 7; and (3) compare each Holder's Liquidation Distribution to the distribution under the Plan ("Plan Distribution") that such Holder would receive if the Plan were confirmed and consummated.

To assist the Bankruptcy Court in making the findings required under section 1129(a)(7), the Debtors have prepared this Hypothetical Liquidation Analysis ("Liquidation"). As the Debtors' Plan has been prepared on a consolidated basis, this Liquidation Analysis was also prepared on a Consolidated basis. As such, proceeds realized from each Debtor are aggregated in a common distribution source. For purposes of distribution, each and every asserted Claim against and Equity Interest in any Debtor is entitled to a distribution from the aggregated proceeds. Any Claim against a Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors are deemed one right to a distribution from the aggregated proceeds.

The Liquidation Analysis presents both "High" and "Low" estimates of Liquidation Proceeds representing a range of management's assumptions and estimates relating to the proceeds to be received from the liquidation of the assets less the costs incurred during the liquidation. It is assumed that a majority of the liquidation would be performed over a period of six to twelve months. The assumed date of the conversion to a hypothetical Chapter 7 Liquidation is approximately April 29, 2009 ("Conversion Date"). It is assumed that a Chapter 7 Trustee (to be appointed), plus certain current Buffets employees will be employed to wind-down the operations and sell the Debtors' assets on a piecemeal basis, and/or at auction.

The statements in the Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) and they may not be used or relied upon for any other purpose.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT ECONOMIC, COMPETITIVE AND OPERATIONAL UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS

BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

(Amounts in $000s)

## Summary Overview

|  | Estimated Book Value | Estimated Liquidation Value High | | Estimated Liquidation Value Low | | See Attached Notes |
|---|---|---|---|---|---|---|
| **Statement of Estimated Assets** | | | | | | |
| Cash | $20,800 | $20,800 | 100% | $20,350 | 98% | 1 |
| Accounts Receivable | 7,000 | 6,072 | 87% | 4,669 | 67% | 2 |
| Inventory | 29,100 | 2,844 | 10% | 678 | 2% | 3 |
| Restricted Cash | 2,100 | - | 0% | - | 0% | 4 |
| Prepaid Expenses | 37,917 | 2,086 | 6% | 233 | 1% | 5 |
| Property Plant & Equipment | 176,701 | 59,499 | 34% | 30,466 | 17% | 6 |
| Goodwill and Other Intangibles | 195,542 | 10,510 | 5% | 1,200 | 1% | 7 |
| Other NonCurrent Assets | 30,967 | 1,360 | 4% | 730 | 2% | 8 |
| Items Not on Balance Sheet | n/a | 5,000 | | 0 | | 9 |
| Gross Liquidation Proceeds | $500,127 | $108,170 | 22% | $58,326 | 12% | |

|  |  | Recovery High Amount | % | Recovery Low Amount | % |  |
|---|---|---|---|---|---|---|
| **Recovery of Claims and Costs** | | | | | | |
| **Estimated Accrued Sales Tax** | $6,000 | $6,000 | 100% | $6,000 | 100% | 10-C3 |
| **Super Priority Claims** | | | | | | |
| New Money Loan | $71,250 | $71,250 | 100% | $52,326 | 73% | 13A |
| Roll-Over Facility | 199,631 | 30,920 | 15% | - | 0% | 13B |
|  | $270,881 | $102,170 | 38% | $52,326 | 19% | |
| Less Wind-Down Costs | | (4,208) | | (8,837) | | 11/12 |
| Less: Carve-Out for Professional Fees | | (4,100) | | (4,100) | | 10-C5b |
| Total Deductions from Recovery | | (8,308) | | (12,937) | | |
| Net Recovery to Super Priority Claims | | $93,862 | 35% | $39,389 | 15% | |
| **Undistributed Net Proceeds** | | $0 | | $0 | | |
| **Pre-Petition Secured Claims** | $379,618 | $0 | 0% | $0 | 0% | 14 |
| **Administrative Claims** | $254,823 | $0 | 0% | $0 | 0% | 15 |
| **Priority Claims** | $17,457 | $0 | 0% | $0 | 0% | 16 |
| **General Unsecured Claims** | $456,138 | $0 | 0% | $0 | 0% | 17 |

As the table above shows, the estimated net proceeds from a Chapter 7 Liquidation Analysis range from approximately $58 million to $108 million before wind-down costs and payment of any claims. The major assumptions are detailed on the following pages.

## MAJOR ASSUMPTIONS

### A. Proceeds from Liquidation of Assets

The estimated Net Book Values ("NBV") of the assets were derived from a combination of actual balances as of November 19, 2008, and projected balances as of April 29, 2009, the assumed date of the conversion to a Chapter 7 Liquidation. In addition, the net estimated liquidation proceeds are on a current value basis rather than net present value basis (unless otherwise noted) even though the Liquidation is expected to take place over a period of 6-12 months (or more).

*1. Cash*

The amounts shown are the projected cash balances available to the Debtors as of the Conversion Date. The estimated cash balances were derived from the forecasted balance sheet based on projected cash flows through the Effective Date. The cash balances,

a. Are prior to any wind-down costs required for the Liquidation except as noted;

b. Exclude payment of any Professional Fees accrued and unpaid to that date;

c. Do not include any "restricted cash" or cash in escrow accounts.

*2. Accounts Receivable*

Accounts Receivable was analyzed by the following major general ledger accounts:

| | | |
|---|---|---|
| a. | Credit Cards | *Recovery range of 90% to 98%, after deductions for fees and true-ups.* |
| b. | Rebates | *Recovery assumed at a range of 67% to 90%. Rebates are based on actual purchases from the respective vendors and should be collectable.* |
| c. | Inter-Company | *On a consolidated basis, all inter-company balances are eliminated.* |
| d. | Other | *Recovery assumed at a range of 25% to 50%. Primarily "Group Account" customers (military, church groups, schools, etc). Collections are managed at the local restaurant level and would be difficult to collect in a wind-down.* |

*3. Inventory*

Inventory includes two primary categories: Food and related items in restaurants (30% of total) and Smallwares which includes dishes, utensils, etc. (70% of total):

a. Food    Due to its perishable nature, would be sold to liquidators or donated to food banks with recoveries between 5% to 25%.

b. Smallwares    In a large scale liquidation such as this, the value of this product is estimated to range between $500 to $1,500 per store.

4. *Restricted Cash*

Primarily cash held in the Wells Fargo Utility Deposit Escrow Account for the benefit of utilities that did not receive separate deposits. This account is, for the most part, equal to ½ month of average usage for each of the respective utilities. It is assumed that these funds will either be used during the wind-down period or that the Utilities will have them applied to their open post-petition balances.

5. *Prepaid Expenses and Other Assets*

   a. *Escrow Deposits*   Miscellaneous deposits with insurance companies and banks.

   b. *Pre-Funded L/Cs*   Post-petition L/Cs with various insurance carriers and food vendors. It is assumed that these L/Cs will be fully drawn in a liquidation to satisfy post-petition obligations.

   c. *Prepaid-Insurance*   Pre-paid premiums for various insurance policies (property, general liability, auto, etc). Assumed to be applied during wind-down period. Little to no recovery is expected on these prepaids.

   d. *Prepaid-Advertising*   Little to no refund would be expected in a Liquidation.

   e. *Other*   Various other prepaids including IT and other services. Minimal recovery.

6. *Property Plant and Equipment (PP&E)*

   PP&E was analyzed in the following major groups:

   a. Cabinet Division   The Company has a division that builds and refurbishes various types of furniture and equipment for use in the Debtors' restaurants. The estimated value of this inventory to third parties under a liquidation would range between 10% and 25% of Book Value.
   b. Corporate Inventory   Primarily includes P/C's and offices supplies. This product would be sold to liquidators.
   c. Leasehold Impr.   Due to its nature, most Leasehold Improvements would remain with the stores.
   d. Equipment   All of the non-attached FF&E in the stores is assumed to be sold to liquidators. The value of the equipment in a mass liquidation is estimated at $15K to $38K per store.
   e. Assets to be Sold:   The Company currently owns approximately 17 parcels of non-operating real estate including closed stores, undeveloped land and office buildings. The liquidation values for these properties are based on valuations provided by an independent appraiser's valuation of the properties.

    e. Assets to be Sold  The Company owns 11 Stores that are currently operating. The liquidation values for these stores are based on an independent appraiser's valuation of the properties.

    f. Leasehold Value: The Company currently leases over 540 properties of which a majority are being leased at or above market rates. For the leases with contractual rentals below estimated current market rates, the Company has valued the leases as described below. The estimated market rentals were provided by an independent appraiser.

        i. For each such lease, the margin of market value rentals over actual contractual rentals was calculated for the remainder of the current lease term, plus a portion of future renewal options. For both the "High" and "Low" valuations, a total term of five years was used. The market value for the Low valuation was assumed at 80% of the "High" market value.

        ii. An assumed marketing period of nine months was assumed in which the Company was responsible for the contractual rentals, CAM, taxes and other non-rent charges.

        iii. The value streams were present valued using a discount rate of 6.0% for the High valuation and 10.0% for the Low valuation.

    Note: The net proceeds for items 6e, 6f and 6g above are net of commissions.

7. *Goodwill and Other Intangible Assets*

| | | |
|---|---|---|
| a. | Goodwill | No Value |
| b. | Acquisition Costs | No Value |
| c. | Liquor Licenses | It is estimated that the Liquor Licenses at the Tahoe Joes stores could be sold be sold for between $200K and $510K. |
| d. | Recipes | Potential value as part of sale of "Trademarks" below |
| e. | Trademarks | Under the assumption that a buyer of some of the Leasehold Interests would continue to operate the restaurants under their current tradename, a value of up to $10 million was assumed. |

8. *Other Non-Current Assets*

| | | |
|---|---|---|
| a. | Deposits: Utilities | It is assumed that these funds will either be used during the wind-down period or that the Utilities will have them applied to their open post-petition balances |
| b. | Deposits: Insurance | The Company owns a "Split Dollar Life Insurance" policy on an employee with an estimate current value of $400K to $700K |

    c. Deposits: Miscell.       Various miscellaneous deposits
    d. Net Debt Issuance Costs: No Value

9. *Non-Balance Sheet Accounts*

    a. *Preference Claims Actions*

    Under a Liquidation scenario, the Company would pursue numerous potential Preference Actions to force recovery of certain payments from creditors that were made by the Company during the 90 day period prior to the Chapter 11 Filing. The Company is currently in the process of reviewing its payment records to determine the amount and number of potential preference action items that could be pursued. Based on a preliminary review, the value range of these potential actions is estimated at $0 to $5.0 million

    b. *Pending Lawsuits*

    *The Company does not have any pending lawsuits against third parties that are expected to result in net proceeds to the Company.*

**B. Costs/Claims Due to Conversion to Chapter 7**

The Estate would incur additional costs and claims due to the conversion of the Chapter 11 case to a Chapter 7 case. In addition, the estate could bear considerable costs to liquidate the assets with value and for the wind-down of the Estate.

10. *Estimated Additional Costs and Claims Due to a Chapter 7 Conversion*

    A. Payroll and Payroll Taxes: As most of Buffets employees are paid in arrears, there is estimated to be approximately $17 million of accrued payroll and payroll taxes as of the Effective Date. These costs receive Administrative Claim status in this Liquidation Analysis.

    B. Severance: Under this Liquidation Analysis, it was assumed that normal Company Practice would not be followed and that Severance would not be paid. As a note, under normal Company Practice, the total amount owed would be approximately $30 million.

    C. Accounts Payable and Accrued Expenses

        1. Accounts Payable and Accrued Expenses: As of the conversion date, it is estimated that there will be approximately $58 million of post-petition accrued costs and payables (primarily trade vendors). Some of the vendors, primarily Food Vendors and Utilities) have Letters of Credit and deposits totaling approximately $31 million to secure their receivables. The remaining claims would receive Administrative Claims status.

        2. Insurance and General Liability:
            i. General Liability      $15 million. Consists of various claims and lawsuits against the Debtors. The reserve amount is the estimated

|   |   |   | amount for which the Company is responsible. The Company is self-insured with large ($250K to $500K) individual stop-loss levels after which insurance policies kick in. It is estimated that approximately $13 million is pre-petition (General Unsecured Claims) and approximately $2 million is post-petition (Administrative Claims). |

      ii.    Insurance    $3 million. Consists of the Company's portion of medical claims and are assumed to be post-petition (administrative claims).

3. Sales Taxes: The Company collects sales tax on its customer sales and remits the proceeds to the respective taxing jurisdictions approximately one month after collection. These proceeds are in effect "Trust Fund" proceeds and would be remitted to the taxing jurisdictions prior to any other claim (including the Super-Priority Claims) being paid.

4. Gift certificates: Any outstanding customer gift certificate would not be honored as store operations have ceased. These claims (assumed to be post-petition) would receive Administrative Claims status.

5. Professional Fees: Treatment is based on terms of the DIP Agreement:
    i. Lenders' Professionals: Do not receive a recovery under a Chapter 7 Conversion as they are not covered by the DIP Agreement Carve-Out
    ii. Other Retained Prof.: Under the DIP Agreement Carve-Out, the Professionals for the Company and the UCC will receive payment out of the proceeds paid to the Super-Priority Claims

6. Property Taxes: Accrued property taxes (post-petition) receive Administrative Claim status. An exception here would be for properties with value under the Leasehold Valuation analysis, those taxes would be paid in order to retain the value of the property.

7. Taxes: Unpaid federal, state and local taxes would receive a Priority Claim in a Liquidation.

8. Workers Compensation Claims: Covered under existing Letters of Credit. Any claims in excess of the Letters of Credit become the responsibility of the insurance carrier subject to further claims from such carriers.

D. New Claims Due to Conversion to Chapter 7

    1. Lease Rejection Claims
        i. Assumed Leases: Over 320 real estate leases were assumed during the post-petition period. In most cases, the landlords would receive an Administrative Claim equal to 24 months of rent.

  ii. Non-Assumed Leases: The remaining real estate leases that were not assumed would receive General Unsecured Claims under Section 502(b)(6).
 2. Other Contracts Numerous other non-real estate contracts would also be rejected. Most of the parties to these contracts would be entitled to file General Unsecured Claims.

## C. Wind-Down Costs

*11. Costs required for wind-down of the Estate and for the liquidation of the assets.*

It is estimated it could take 6 to 12 months or more to perform the following activities necessary to wind-down the Estate:

a. Liquidation of Assets
 i. Sale of major owned real estate assets
 ii. Sale of leases with leasehold value greater than market value
 iii. Collection of accounts receivable and liquidation of inventory
 iv. Liquidation of remaining assets with value

b. Close and reconcile books including collecting all accounts receivable, reviewing accounts payable and filing all required tax returns.

c. Review and reconcile various creditor claims

The major types of costs to be incurred for the wind-down of Estate and sale of assets are shown below. It should be noted, that due to the low creditor recoveries, the actual costs to be incurred in this effort will be subject to review by the holders of the Super-Priority Claims.

 *a. Company Personnel*
  i. Management Oversee wind-down of operations and assist Chapter 7 Trustee
  ii. Accounting Closing books and reconcile final bills and accounts payable
  iii. Tax Prepare final tax returns
  iv. Real Estate Management process for sale of stores and Leasehold Interests. It is assumed a third party real estate company will ultimately manage this process.
  v. Legal Close remaining general liability and legal claims
  vi. MIS Maintain most systems during wind-down process
  vii. Treasury Manage the wind-down of the Debtor's treasury activities including closing bank accounts, and consolidating cash.

 b. Wind-Down Costs: Non-Personnel
  Primarily office space for the Corporate personnel during the wind-down process

 c. Store Personnel

Existing store personnel will be used to assist in the store closure process including removing assets with value and initiating marketing activities for those locations with favorable leasehold values.

d. Professionals
   i. Legal — Assist in wind-down of Estate and reconciliation of claims
   ii. Management — Transition of numerous functions
   iii. Real Estate — Marketing of the real estate assets
   iv. Claims Admin. — Close-out claims process
   v. Accounting — Closing/auditing the books and preparation of final tax returns

*12. Chapter 7 Trustee Fees Expenses*

It is assumed a Chapter 7 Trustee would be appointed by the Court.

**D. Claims of the Estate (all Classes)**

*13. Super-Priority Secured Claims*
This is the $284.6 million facility created under the original DIP Agreement and is composed of two Claims:
a. $85.0 million New Money Facility. At the assumed Liquidation Date, approximately $13.75 million of the facility will have been paid down during the post-petition period. The estimated balance is expected to be $71.25 million.
b. $199.6 million Roll-Over Term Loan

In this Liquidation Analysis, it is assumed that these claims receive priority over all other claim categories (except for payment of Sales Taxes as previously noted) and will receive substantially all, if not all, of the net proceeds from the liquidation value of the assets. In addition, from the recoveries to the Super-Priority Secured Claims, the following payments/claims will be paid:

a. The costs to wind-down the Estate as noted in Section C herein
b. Payment of the accrued and unpaid Professional Fees owed to the Debtors and UCC's professionals.

*14. Pre-Petition Secured Claims*
This class includes the remaining pre-petition secured debt as follows:
a. The remaining $324.4 million of the total $524.0 million in Term Loans that was not included in the $199.6 million Roll-Over Line noted above
b. Revolver: $40.0 million
c. Letter of Credit Facility: $69.6 million (assumes remaining L/Cs are drawn)

Total Estimated Pre-Petition Secured Claims: $434.0 million, less $54.4 million in Adequate Protection Payments paid during the Chapter 11 period resulting in a net claim of $379.6 million.

15. *Administrative*
    a. Estimated Claims as of October 1, 2008 (pre Chapter 7 conversion)
        i.  503(b)(9)                              $4.1 million
    b. Accrued Costs and Accounts Payable as of Conversion Date
        i.  Accrued Payroll                        $17.0 million
        ii. Other Admin                            $46.5 million
    c. New Claims Due to Conversion to Chapter 7
        i.  Lease Rejection Claims                 $187.3 million
    Total Estimated Administrative Claims:         $254.8 million

16. *Priority Claims*
    a. Estimated Claims as of October 1, 2008 (pre Chapter 7 conversion)
        i.   Taxes                                 $14.6 million
        ii.  Employees                             $0.5 million
        iii. Other                                 $1.8 million
    b. Accrued as of Conversion Date
        i.   Taxes                                 $0.6 million
    Total Estimated Priority Claims:               $17.5 million

17. *General Unsecured Claims*
    a. Estimated Claims as of October 1, 2008 (pre Chapter 7 conversion)
        i.   Accounts Payable                      $23.9 million
        ii.  General Liability                     $1.7 million
        iii. R/E Lease Rejection                   $48.0 million
        iv.  Employee Claims                       $15.5 million
        v.   Executory Contracts                   $7.1 million
        vi.  Other                                 $8.0 million
    b. Unsecured Bonds                             $320.9 million
    c. New Claims Due to Chapter 7 Conversion
        i.   Lease Rejection Claims                $31.0 million
        ii   Other Contracts                       n/a
    Total Estimated General Unsecured Claims: $456.1 million